NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**LILIBETH MICHELSON,**
*Petitioner*

**v.**

**DEPARTMENT OF THE ARMY,**
*Respondent*

_____

2019-1811

_____

Petition for review of the Merit Systems Protection Board in No. AT-0752-18-0424-I-1.

_____

Decided: May 11, 2020

_____

JACK BRADLEY JARRETT, III, Alan Lescht and Associates, PC, Washington, DC, for petitioner.

ISAAC B. ROSENBERG, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by JOSEPH H. HUNT, REGINALD THOMAS BLADES, JR., ROBERT EDWARD KIRSCHMAN, JR.

_____

Before CHEN, LINN, and STOLL, *Circuit Judges.*

PER CURIAM.

Lilibeth Michelson ("Michelson"), a former Supply Technician at the Reserve Officer Training Corps in Daytona Beach, Florida, appeals from the final decision of the Merit Systems Protection Board ("Board"), stemming from the Initial Decision of the Administrative Judge ("AJ"), affirming her removal from Federal Service based on three charges: (1) absent without leave ("AWOL") from January 9, 2018 through January 19, 2018; (2) failure to follow directions on January 29, 2018; and (3) creating a disturbance on January 29, 2018. *Michelson v. Dep't of the Army,* No. AT-0752-18-0424-I-1 (Dec. 21, 2018) ("*Initial Decision*"). Because the AJ's Initial Decision was in accordance with law and supported by substantial evidence, we affirm.

Petitioner has the burden to show that the agency action is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

With regard to the first charge, Michelson argues that the AJ erred by not accepting an October 25, 2018 letter from nurse practitioner Anthony Lagana as administratively acceptable evidence of Michelson's anxiety and depression during the AWOL period. Substantial evidence supports the AJ's finding that Lagana's October 25, 2018 letter was not administratively acceptable.[1] As the AJ correctly found, several problems undermine the force of that letter. Most fundamentally, the letter does not go into detail about the relationship between Michelson's anxiety

---

[1]    Because the letter was found not to be administratively acceptable, we need not address whether the letter, dated after Michelson's removal, was properly considered.

and depression and her inability to perform her work. Rather, the letter was conclusory in its key statements that "Ms. Michelson needed to be off work until 1/19/18 for medical purposes due to her anxiety and depression," and was "medically incapacitated and unable to attend work." J.A. 42. *See Young v. U.S. Postal Serv.*, 79 M.S.P.R. 25, 33 (1998) (rejecting, due to a "lack of detail as to the medical condition, the diagnosis and prognosis," a letter stating that "the appellant was unable to work" because "she was 'overwhelmed and depressed'"). Moreover, the letter's conclusions were based on Michelson's appointment with nurse practitioner Kayla Ritzel on December 13, 2017, a visit that was scheduled as a follow-up visit for a sore throat. According to the contemporaneous progress notes of that appointment, anxiety was discussed, but there is no indication that Michelson would be imminently unable to perform her work duties. Indeed, the notes show that, while Michelson requested a month off "to help her anxiety, depression and get her started on her new meds," J.A. 76, Ritzel made no determination that this was a medical necessity.

Moreover, as detailed in the Agency's removal letter, Michelson had thrice sought and been denied various types of leave for much of the time period for which she was AWOL: once as annual leave (January 8 through 19), once to take care of her ill father (January 8 through 16), and once based on a December 15, 2017 letter from Ritzel (December 18 through January 19).

Additionally, Michelson argues that the AJ refused to consider Lagana's letter of October 25 because it was submitted after the AJ's determination, and that this was error. *See Initial Decision* at 14 ("Further, the appellant failed to provide this information to the agency in a timely manner even in response to the notice of proposed removal. Thus, the agency's AWOL decision remains appropriate" (citing *Atchley v. Dept' of the Army*, 46 M.S.P.R. 297, 301 (1990))). However, the AJ *did*, in fact, consider that letter,

and found it to be not administratively acceptable for substantive reasons. *Id.* at 13–14 ("[E]ven if [Lagana's letter] had been timely submitted, this note does not comply with the leave restriction letter because it is conclusory and fails to explain the appellant's incapacitation.").

Charges 2 and 3 address Michelson's actions on January 29, 2018, the first day of her suspension.[2] With respect to charge 2—failure to follow directions by going to work on January 29, 2018—Michelson argues that the letter suspending her was ambiguous as to whether her suspension began upon receipt of the standard form 50 or on a date certain. The letter stated: "[Y]ou will be suspended from duty without pay for seven (7) calendar days beginning Monday, 29 January 2018 through Sunday, 4 February 2018," and "A Standard Form 50, Notification of Personnel Action, documenting your suspension will be forwarded separately." J.A. 93.

As the AJ correctly found, Michelson's suspension unambiguously began on January 29, and was not contingent on the receipt of Standard Form 50. *Initial Decision* at 15 ("COL Kraft's letter is unambiguous that the appellant was to be suspended on January 29, 2018. While it does state that an SF-50 will be issued, it does not indicate that the suspension will be held in abeyance until CPAC issues the SF-50."). "The appellant does not dispute that she came to work on January 25, 2018." *Id.* Substantial evidence supports the AJ's determination that Michelson failed to follow the unambiguous instruction not to be at work on January 29.

Michelson exacerbated that failure by remaining on campus at the computer lab after she was explicitly told to "leave the premises because she was officially suspended."

---

[2]    The suspension was independent of the AWOL dates in charge 1.

*Id.* at 16. The AJ was within her discretion to credit the contemporaneous statement by CPT Karlewicz about the interaction and to discount Michelson's assertion that she did not understand that "premises" referred to the whole campus and not just the supply room. Substantial evidence thus supports the AJ's determination as to charge 2.

Charge 3—creating a disturbance by failing to leave the premises—is also supported by substantial evidence. Michelson argues that she was not violent and did not curse or resist when found in the computer lab, and therefore was not creating a disturbance. However, Michelson's failure to leave after her confrontation with Karlewicz necessitated an "unnecessary[ily] disrupti[ve]" search of "the work place," J.A. 82, and an escort to ensure Michelson left the premises. The determination of whether that "result[ed] in an adverse effect on morale, production, or maintenance of proper discipline," AR 690-700, Chapter 751, was within the Agency's discretion.

Finally, we reject Michelson's challenge to the Agency's choice to remove Michelson from her position. Michelson failed to establish that the AJ erred in sustaining any of the Agency's three charges. Moreover, as the AJ correctly observed, the Agency considered and balanced all of the relevant factors set forth in *Douglas v. Department of Veterans Affairs*, 5 M.S.P.R. 289, 305–06 (1981), including Michelson's length of service with the Agency, in selecting the penalty of removal. *Initial Decision* at 23–24. We agree with the AJ that the Agency's penalty did not "clearly exceed[] the bounds of reasonableness." *Parker v. U.S. Postal Serv.*, 111 M.S.P.R. 510, 514 (2009), *aff'd*, 355 F. App'x 410 (Fed. Cir. 2009).

\* \* \*

For all the above reasons, we hold that the Board's decision was in accordance with law and supported by substantial evidence.

## AFFIRMED

COSTS

No costs.